

**FILED**

May 14 2018, 9:21 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS
ESTATE OF STAGGS AND
MACKENZIE TAYLOR

J. Kevin King
Cline, King & King, P.C.
Columbus, Indiana

William R. Ogden
Farrar & Ball, LLP
Houston, Texas

ATTORNEY FOR APPELLANTS JENNIFER
DAUGHERTY AND
ESTATE OF DAUGHERTY

William H. Mullis
William H. Mullis, P.C.
Mitchell, Indiana

ATTORNEYS FOR APPELLANT
ESTATE OF STEELE

Matthew J. Schad
George A. Budd, V
Schad & Schad, P.C.
New Albany, Indiana

ATTORNEY FOR APPELLEE

Scott B. Cockrum
Hinshaw & Culbertson LLP
Schererville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Estate of Zachary D. Staggs by and through his Personal Rep., Denise Coulter, and Mackenzie Taylor, by and through her Parent and Guardian, Denise Coulter;

Jennifer L. Daugherty, Individually and as Personal Representative of the Estate of Michael G. Daugherty, Deceased; and

Dennis Byrd, as Special Administrator of the Estate of Shannon R. Steele,

*Appellants-Plaintiffs,*

v.

ADS Logistics Co., LLC,

*Appellee-Defendant*

May 14, 2018

Court of Appeals Case No. 64A03-1708-CT-1961

Appeal from the Porter Superior Court

The Honorable Roger V. Bradford, Judge

Trial Court Cause No. 64D01-1108-CT-7592

**Baker, Judge.**

[1] In January 2010, a large steel coil that was secured to a flatbed tractor-trailer became unsecured and struck other motorists traveling on State Road 37. The accident resulted in serious injuries and multiple deaths.

[2] Following the accident, the following parties filed complaints that were ultimately consolidated: (1) the Estate of Zachary D. Staggs by and through his personal representative, Denise Coulter ("Staggs"); (2) Mackenzie Taylor, by and through her parent and guardian, Denise Coulter ("Taylor"); (3) Jennifer L.

Daugherty, individually and as personal representative of the estate of Michael G. Daugherty ("Daugherty"); and (4) Dennis Byrd, as special administrator of the estate of Shannon R. Steele ("Steele") (collectively, the Appellants).

[3] One of the named defendants was ADS Logistics Co., LLC (ADS), which had warehoused the steel coil. ADS moved for summary judgment, and the trial court granted its motion, finding as a matter of law that ADS had no duty to the Appellants. The Appellants appeal, arguing that summary judgment was improperly granted. Finding no error, we affirm.

## Facts

[4] ADS is, in part, a warehouse facility. ADS has a long-standing contractual relationship with ArcelorMittal USA, LLC ("Mittal"), pursuant to which ADS warehouses products for Mittal. Relevant to this case is ADS's agreement to warehouse a large steel coil weighing just under 40,000 pounds for Mittal.

[5] Mittal agreed to sell or ship the coil to Ohio River Metal Services, Inc., doing business as Eagle Steel Products, Inc. ("Eagle Steel"). Eagle Steel then hired Kendall Transportation to haul the steel coil from ADS to Eagle Steel. Israel Rankin operated a tractor-trailer that he owned under the motor carrier authority of Kendall Transportation.

[6] On January 11, 2010, Kendall Transportation dispatched Rankin to haul the steel coil from ADS to Eagle Steel. Eagle Steel paid Kendall Transportation for this work, and, in turn, Kendall Transportation paid Rankin a percentage of the load plus a fuel surcharge. Kendall Transportation's dispatcher and Rankin

controlled the means and methods of delivering a load to a customer. Rankin had been trained how to secure a steel coil through previous employment and through his work at Kendall Transportation. He provided his own equipment to secure the coil to his vehicle.

[7] At the ADS warehouse, an ADS crane operator placed the steel coil onto Rankin's flatbed trailer. ADS corporate representative Matt Brinkley attested that, as would normally occur, the crane operator followed Rankin's instructions on where and how to place the steel coil on the flatbed. Rankin attested that he stood on top of his trailer and directed the crane operator where to place the steel coil. Brinkley also attested that the crane operator would not have loaded a coil onto a flatbed in a position that was obviously and apparently unsafe.

[8] After the crane operator moved the steel coil onto the flatbed, Rankin secured the steel coil to the trailer. Brinkley, Kendall Transportation, Rankin, and Kendall Transportation's safety consultant agree that it is the driver's responsibility to secure the load onto the driver's vehicle.

[9] Rankin performed a mental calculation to determine how to secure the coil. Specifically, he would take the total weight of the coil and divide it in half to determine the amount he had to account for. In this case, he calculated he had to secure approximately 21,000 pounds; therefore, he used 3 chains, which he mistakenly believed would equal a working load limit of 30,000 pounds. He erroneously thought that each chain had a working load limit of 10,000 pounds,

but in fact, each chain had a working load limit of 6,600 pounds. Moreover, Rankin used 3 binders to secure the coil, but each binder had a working load limit of only 5,400 pounds, meaning that the total working load limit for the binders was 16,200 pounds—well below the 21,000 pounds required for the subject coil.

[10] After securing the steel coil to his flatbed trailer, Rankin began the drive to Eagle Steel. He made one stop to eat lunch. After lunch, he checked the load to ensure that it was still secured and then continued on his way. In Mitchell, a car pulled out in front of him and Rankin was forced to brake a little harder than normal (the "hard braking incident"). He did not stop to check his load after the hard braking incident even though he had observed that the incident "jarred his truck," that he "felt something in the truck," and afterwards, that the load "felt funny." Appellants' App. Vol. III p. 72, 74.

[11] A few miles down the road from the hard braking incident, while traveling on State Road 37 in Orange County, the steel coil became unsecured. At that time, Taylor, Staggs, and Steele were traveling in Staggs's pickup truck, and Daugherty was traveling in a different vehicle, near Rankin's tractor-trailer. When the coil became unsecured, it left Rankin's tractor-trailer and crashed into the pickup truck and Daugherty's vehicle, killing Staggs, Steele, and Daugherty and seriously injuring Taylor.

In January 2012, Daugherty, Steele, Staggs, and Taylor filed lawsuits stemming from the accident against multiple defendants, including ADS.[1] These lawsuits were later consolidated. On December 16, 2016, ADS filed a motion for summary judgment. Following briefing and a hearing, on July 27, 2017, the trial court granted summary judgment in favor of ADS, finding as a matter of law that ADS had no duty to the plaintiffs "regarding securing the load to the tractor trailer that was involved in this incident." Appealed Order p. 1. The Appellants now appeal.

# Discussion and Decision

## I. Standard of Review

Our standard of review on summary judgment is well settled:

> The party moving for summary judgment has the burden of making a prima facie showing that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Reed v. Reid*, 980 N.E.2d 277, 285 (Ind. 2012). Once these two requirements are met by the moving party, the burden then shifts to the non-moving party to show the existence of a genuine issue by setting forth specifically designated facts. *Id.* Any doubt as to any facts or inferences to be drawn therefrom must be resolved in favor of the non-moving party. *Id.* Summary judgment should be granted only if the evidence sanctioned by Indiana Trial Rule 56(C) shows there is no genuine issue of material fact and that the moving party

---

[1] Also named as defendants in each of the complaints were Rankin, Kendall Transportation, and Reitnouer, Inc., the designer and manufacturer of the flatbed trailer. It appears from the Chronological Case Summary that litigation related to these defendants is still ongoing.

deserves judgment as a matter of law. *Freidline v. Shelby Ins. Co.*, 774 N.E.2d 37, 39 (Ind. 2002).

*Goodwin v. Yeakle's Sports Bar and Grill, Inc.*, 62 N.E.3d 384, 386 (Ind. 2016).

[14]    To prevail on a claim of negligence, a plaintiff must show (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) compensable injury proximately caused by that breach. *Id.* Absent a duty, there can be no negligence or liability based upon the breach, and whether a duty exists is a question of law for the court to decide. *Id.* at 386-87.

# II.  Duty

[15]    The Appellants argue that the trial court erred by finding as a matter of law that ADS bore no relevant duty to them. Specifically, they argue that ADS assumed a duty by virtue of its contract with Mittal, that ADS had a duty under common law, and, alternatively, that there are issues of fact that must be resolved to determine whether common law imposes a relevant duty on ADS.

# A.  Contract

[16]    A duty of care may arise where one party assumes a duty. *Yost v. Wabash College*, 3 N.E.3d 509, 517 (Ind. 2014). One way in which a party may assume a duty is by contract. Therefore, if a contract "affirmatively evinces intent to assume a duty of care, actionable negligence may be predicated upon the contractual duty." *Stumpf v. Hagerman Constr. Corp.*, 863 N.E.2d 871, 876 (Ind.

Ct. App. 2007). A duty imposed by contract, once formed, is non-delegable. *Ryan v. TCI Architects/Eng'rs/Contractors, Inc.*, 72 N.E.3d 908, 914 (Ind. 2017).

[17]     Here, the Appellants argue that the contract between ADS and Mittal (the entity that paid ADS to warehouse the steel coil) imposes a duty owed by ADS to the Appellants. Initially, we note that the contract states that it is "the entire agreement of the parties with respect to the subject matter hereof" and that it may not be modified except in writing. Appellants' App. Vol. IV p. 65. Furthermore, it explicitly provides that

> [n]othing in this . . . Contract is intended to confer any rights or
> remedies upon any persons other than Mittal and [ADS] and
> their respective successors and permitted assigns . . . nor shall
> any provision of this . . . Contract give any third person any . . .
> claim or cause of action against any party.

*Id.* at 66. From the outset, therefore, it is readily apparent that this contract was not intended to bestow any rights upon any third parties or, concomitantly, create any duty owed by ADS to any third parties.

[18]     The Appellants direct our attention to the following sections of the contract in support of their argument that ADS assumed a duty:

> (a)     Mittal is committed to safety, health and protection of the
>         environment. In particular, safety of its personnel, and
>         those of its suppliers, contractors, and visitors to Mittal's
>         Premises is a priority for Mittal. No other priority may
>         override safety. [ADS] fully endorses these policies and
>         adopts them as its own, *in so far as they relate to the
>         performance of its obligations under this . . . Contract*. [ADS]

shall have and shall enforce and strictly comply with a strong internal safety policy that includes all current industry standards and any other applicable safety codes or procedures. . . .

\*\*\*

(c)     *While on Mittal's Premises*, [ADS] shall comply with any safety, health, and environmental measures implemented by Mittal from time to time in respect of its property and personnel, including those of contractors, suppliers and other persons visiting or working on the Mittal's Premises.

(d)     [ADS] shall notify Mittal immediately of any safety, health or environmental issues . . . *which may arise in connection with the performance of its obligations under this . . . Contract*.

*Id.* at 66 (emphases added). Subsections (a) and (d) are limited to ADS's performance of its obligations under the contract, which, again, was simply for the warehousing of the coil. ADS's contract with Mittal did not relate to the transportation of the coil off of ADS's property. And subsection (c) is limited to Mittal's premises, which is not relevant to the case at hand. No contractual language requires or implies that ADS assumed a duty to secure the warehoused coil onto another driver's trailer. Therefore, we simply cannot conclude that this contract created a duty owed by ADS to the Appellants with respect to the way in which the steel coil was secured to Rankin's flatbed trailer.

[19]     The Appellants direct our attention to the portion of subsection (a) requiring ADS to have, enforce, and comply with a strong internal safety policy. Indeed, ADS has a policy that requires all ADS *drivers* to comply with specific cargo securement and protection procedures. Appellants' App. Vol. VI p. 101-07.

That policy, however, is not relevant to the case at hand, as Rankin was not an ADS driver and ADS's only role in the process was to ensure that its crane operator followed Rankin's instructions regarding the loading of the coil onto the flatbed trailer. After the loading was complete, so was ADS's involvement. We do not find that this policy created a duty owed by ADS to the Appellants regarding the way in which the coil was secured to the flatbed by Rankin. The trial court did not err by finding as a matter of law that neither the contract nor ADS's driver policy created a duty owed by ADS to the Appellants.

## B. Common Law

[20] The Appellants also argue that even if there was no contractual duty, a duty is imposed on ADS by common law. Whether a duty exists depends upon balancing the following factors: (1) the relationship between the parties; (2) the reasonable foreseeability of harm to the person(s) injured; and (3) public policy concerns. *Goodwin*, 62 N.E.3d at 387.

## 1. Relationship

[21] As for the relationship between ADS and the Appellants, there is none. ADS's only involvement was to warehouse the steel coil and then load it onto Rankin's flatbed per Rankin's instructions. ADS also had no contractual relationship with Rankin, Kendall Transportation, or Eagle Steel, nor did it have any right of control over Rankin's acts, including the securing of the coil onto the flatbed. The accident did not occur on ADS's property, it did not involve ADS's employees or vehicles, and it did not involve anyone with whom

ADS has a contractual relationship. *See Williams v. Cingular Wireless*, 809 N.E.2d 473, 476 (Ind. Ct. App. 2004) (wireless company did not owe a duty to person injured by a driver using a cell phone while driving because company had no contractual relationship with the plaintiff, accident did not occur on company's property or involve its employee or vehicle, and product did not malfunction and cause the injury). This factor weighs against finding a duty.

## 2. Foreseeability

[22] Turning next to the foreseeability of harm to the Appellants, our Supreme Court clarified in *Goodwin* how this factor should be analyzed:

> "the foreseeability component of proximate cause requires an evaluation of the facts of the actual occurrence, while the foreseeability component of duty requires a more general analysis of the broad type of plaintiff and harm involved, without regard to the facts of the actual occurrence."

*Goodwin*, 62 N.E.3d at 389 (quoting *Goldsberry v. Grubbs*, 672 N.E.2d 475, 479 (Ind. Ct. App. 1996)). Put another way, we must "'evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party.'" *Goodwin*, 62 N.E.3d at 391 (quoting *Strahin v. Cleavenger*, 603 S.E.2d 197, 207 (W.Va. 2004)).

[23] Per our Supreme Court's instructions, as we consider whether the harm suffered by the Appellants was reasonably foreseeable to ADS, we must ask the broad questions of what type of plaintiffs are the Appellants and what type of harm

occurred. The plaintiffs are motorists and the type of harm that occurred is a vehicular accident after commercial cargo became unsecured and struck the motorists.

[24] As a general matter, of course it is foreseeable that large and heavy cargo, which is secured to a flatbed trailer, could become unsecured on a public roadway and cause injuries to nearby motorists. But the broad type of defendant here—a warehousing entity—would have no reason to foresee that its own conduct, in warehousing the cargo or in loading the cargo onto another entity's vehicle, at the instruction of the other entity's driver, would result in harm to motorists. Put another way, an entity that has no role whatsoever in securing the cargo to the flatbed could not foresee that its own actions would result in that cargo becoming unsecured. This factor weighs against a finding of duty.

### 3. Public Policy

[25] Finally, we must consider public policy. This factor focuses on "who is, or should be, in the best position to prevent [an] injury and how society should allocate the costs of such injury." *Cox v. Stoughton Trailers, Inc.*, 837 N.E.2d 1075, 1080 (Ind. Ct. App. 2005).

[26] In this case, Rankin was in possession and control of his flatbed trailer. Rankin told the ADS crane operator how to load the steel coil onto the flatbed trailer, and after that point in time, ADS had no more involvement with the coil. Rankin was solely responsible for securing the steel coil to his vehicle. He

provided his own equipment, including chains and binders, to do so. Rankin then hauled the cargo and was responsible for ensuring that it remained secured throughout the drive. After the hard braking incident, Rankin was the only person able to decide whether to stop and ensure the coil was still fully secured.

[27] It is apparent that the party best suited to prevent an injury to motorists with respect to commercial cargo secured to a flatbed trailer is the entity responsible for securing, hauling, and checking on the cargo during the drive. Here, that is Rankin and his employer, Kendall Transportation.[2] ADS had such a limited role in these proceedings that it would have had little to no ability to prevent the tragic accident that occurred.

[28] Therefore, we find that there is no common law duty owed by ADS to the Appellants. Moreover, we disagree with the Appellants that there are issues of fact with respect to duty that must be determined by a factfinder.

[29] Under these circumstances, the trial court did not err by finding as a matter of law that ADS did not owe a duty to the Appellants. Therefore, summary judgment was properly granted in favor of ADS.

---

[2] This statement in no way implies a conclusion regarding the liability of either Rankin or Kendall Transportation. Instead, we merely conclude that as a matter of public policy, they, rather than ADS, were in the best position to prevent the ultimate harm.

The judgment of the trial court is affirmed.

Kirsch, J., and Bradford, J., concur.