FILED

Jul 25 2018, 8:24 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANTS

Andrew J. Detherage
Christian P. Jones
Andrea S. Warren
Barnes & Thornburg LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEES

Scott A. Faultless
Craig Kelley & Faultless LLC
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

ONB Insurance Group, Inc.,
d/b/a Old National Insurance,
and Joseph E. Kenworthy,

*Appellants-Defendants,*

v.

The Estate of Joann Marie
Megel, Deceased; the Estate of
Edward J. Megel, Deceased;
Darcy Megel; Nicholas Megel;
Christina Megel; and Amy
Jones,

*Appellees-Plaintiffs*

July 25, 2018

Court of Appeals Case No.
40A01-1707-CT-1513

Appeal from the Jennings Circuit
Court

The Honorable Jon W. Webster,
Judge

Trial Court Cause No.
40C01-1105-CT-110
40C01-1205-CT-16

**May, Judge.**

[1]     In this interlocutory appeal, ONB Insurance Group, Inc., d/b/a Old National

Insurance, and Joseph E. Kenworthy (collectively, "ONI") appeal the trial

court's denial of their motion for partial summary judgment in favor of The Estate of Joann Marie Megel, Deceased; the Estate of Edward J. Megel, Deceased; Darcy Megel; Nicholas Megel; Christina Megel; (collectively, "the Megel Parties" and Amy Jones ("Jones") (collectively, "the Accident Parties"). ONI presents multiple issues for our review, which we restate as:

1. Whether, as a matter of law, the Accident Parties can establish ONI owed them a common law duty;

2. Whether, as a matter of law, ONI assumed a duty to the Accident Parties; and

3. Whether ONI conspired with or aided and abetted an insured's violation of the terms of the Federal Motor Carrier Safety Regulations ("FMCSR").

We reverse and remand.

# Facts and Procedural History[1]

## Background Facts

ONI is "an independent insurance broker that seeks insurance quotes from multiple brokers and insurance companies." (App. Vol. XVIII at 126.) Kenworthy works as an agent for ONI. One of the insurance companies ONI

---

[1] We held oral argument on this matter on May 17, 2018, in Jeffersonville, Indiana, as part of the Indiana Bar Association's Leadership Development Academy. We thank the organizers for their hospitality and counsel for their congeniality and excellent presentations.

worked with to procure insurance was Occidental Fire and Casualty Company of North Carolina ("Occidental"). ONI uses American Underwriting Services ("AUS")[2] and Creative Underwriters ("CU") to write insurance quotes.

[3] William Hackney ("Hackney") was the owner of Hackney Trucking ("HT"), formed in 2004. Hackney and ONI began their relationship in 2008, when Hackney owned HT. On August 18, 2010, Hackney sold all of HT's assets to C&K Transport, Inc. ("C&K"), which is also owned by Hackney. C&K and HT had the same phone number, email, bank account, and business location. C&K utilized HT's assets including trucks, equipment, and employees, and C&K's earnings were used to pay HT's outstanding debts.

[4] To obtain federal operating authority for C&K, Hackney was required to submit a number of forms. In their brief, the Accident Parties delineated the required forms that are relevant to this case:

> 1) OP-1: application for motor carrier authority, 49 CFR 365.105(a), and mandating financial responsibility the applicant "must maintain and have on file with the FMCSA" of liability insurance in a minimum amount of $750,000;
>
> 2) BMC-91X: part of the application, 49 CFR 365.109 & 385.305(b)(3) & (c), and mandating financial responsibility for

---

[2] "[AUS] was an authorized agent of Occidental, pursuant to a written agency agreement. Pursuant to the agency agreement, Occidental granted AUS the express authority to receive information about C&K, evaluate and underwrite C&K's coverage, issue a binder for coverage, and compile and issue an insurance policy to C&K." (App. Vol. VII at 5-6) (internal citations omitted).

bodily injury be filed with the FMCSA; 49 CFR 365.109(5)(i); and

3) BMC[-]34: part of the application, 49 CFR 365.109 & 385.305(b)(3) & (c), and mandating financial responsibility for cargo liability be filed with the FMCSA; 49 CFR 365.109(5)(iii).

(Br. of Appellees at 48) (grammatical errors in original) (citations to the record omitted).

[5]     On August 16, 2010, Stacy Hicks of GL Authority[3] helped Hackney complete and submit the OP-1. As part of the OP-1, Hackney was asked, "Do you have now, or have you ever had, any relationship with any other FMCSA Regulated entity within the past 3 years?" (App. Vol. XIV at 70.) Hackney answered, "No." (*Id.*) On August 30, 2010, Carla Carson, a representatives from ONI, emailed the AUS underwriter and requested Occidental, who was to provide insurance for C&K, to file a BMC-91X form with the FMCSA, which would provide the FMCSA with information regarding C&K's liability insurance coverage. The FMCSA accepted all relevant forms on August 30, 2010, and C&K obtained its operating authority the same day.

---

[3] Hackney described GL Authority as "a service where we had our fuel cards. It's actually GetLoaded.com, we had our fuel cards through. They had a service where they could get your operating authority for you. I don't know whether I filled it out online or talked to them personally on the phone." (App. Vol. XIX at 30) (errors in original).

## Facts of Incident Prompting Litigation

[6] On February 25, 2011, C&K driver Kenneth Kelley stopped at a weigh station in Lima, Ohio. At the weigh station, he discovered the truck ("C&K Truck") was overweight and the brakes were not working properly. Kelley parked the C&K Truck. The next morning, Kelley heard air coming from the brake area and called Hackney, who asked Kelley to drive the C&K Truck from Lima, Ohio, to Mitchell, Indiana, on a route that did not have any weigh stations. Kelley refused.

[7] On February 26, 2011, Hackney drove to Ohio. He did not perform any repairs on the truck before driving it back to Mitchell, Indiana, and he drove the C&K Truck on the route with no weigh stations. Around 8:00 p.m. that day, Edward Megel was driving on U.S. 50 with his wife, JoAnn Megel, and his granddaughter, Darcy Megel. Edward was waiting to make a left turn when Amy Jones approached him as part of oncoming traffic. Hackney saw Edward's vehicle and realized he might not be able to stop. Hackney, driving the C&K Truck, collided with Edward's and Jones' vehicles. Edward and Darcy sustained injuries from the crash. JoAnn died on March 11, 2011, from injuries sustained in the collision. Jones was also injured. It is undisputed by the parties that the C&K Truck driven by Hackney was at fault for the accident.

## Procedural History of Current Matter

[8] On May 23, 2011, the Megel Parties filed an action for damages against multiple parties, including Occidental, stemming from the accident. On May

18, 2012, Jones filed a separate action for damages against the same parties stemming from the accident. ONI was not an original party to either action. On January 3, 2012, Occidental filed third-party claims in both actions against ONI, alleging ONI made misrepresentations to Occidental that purportedly induced Occidental to issue an insurance policy to C&K. In February 2013, both the Megel Parties and Jones amended their complaints to include ONI as a defendant.

[9] On December 8, 2014, ONI filed a motion for summary judgment with regard to Occidental's third-party defendant claims against ONI, arguing Occidental could not sue ONI, as C&K's insurance agent, for alleged misrepresentations on C&K's application for insurance. Additionally, the motion argued Occidental's claim that ONI conspired with C&K to fraudulently procure insurance failed as a matter of law because "an agent cannot conspire with a principal . . . [and] civil conspiracy allegations require an underlying tort, and there is no underlying misrepresentation claim here." (App. Vol. VI at 238.) On August 17, 2016, the trial court granted ONI's motion for summary judgment as to Occidental's third-party claims against ONI, stating, "As a matter of law, the Court grants summary judgment for ONI/ONB and Kenworthy on these claims" under the heading, "II. Common Law, Statutory

and Actual Fraud/Misrepresentation Claims of Occidental." (App. Vol. XVII at 194.)[4]

[10] On December 8, 2014, ONI filed a motion for summary judgment against the Megel Parties, alleging their claims failed as a matter of law. On January 21, 2015, ONI filed a motion for summary judgment against Jones, alleging her claims failed as a matter of law. On August 17, 2016, the trial court denied both of ONI's motions for summary judgment.[5] The trial court certified its decision for interlocutory appeal, but our court declined to accept jurisdiction over the matter.

[11] On December 19, 2016, ONI filed renewed motions for summary judgment against the Megel Parties and Jones. The renewed motions were based on the Indiana Supreme Court's holding in *Goodwin v. Yeakle's Sports Bar and Grill, Inc.*, 62 N.E.3d 384 (Ind. 2016). The *Goodwin* court stated, regarding a trial court's analysis of foreseeability of an injury for purposes of allocating duty, that the "court is tasked with engaging in a general analysis of the broad type of plaintiff

---

[4] Much of the Accident Parties' arguments regarding duty center around events that occurred between ONI and Occidental in the process of insurance procurement. The record reflects ONI employee Carla Carson told AUS, an agent of Occidental, that Hackney "ha[d] been owner of another trucking firm for over 20 years - he recently decided to form a new company and obtain his authority under the new name." (App. Vol. XIII at 158.) The record also indicates that Hackney converted HT into C&K to allegedly circumvent FMCSR. However, because those facts pertain to the communications between ONI and Occidental, and no party challenged the trial court's earlier conclusion that ONI did not make any material misrepresentations to Occidental, we are confined to the facts relevant only to the filing of the operating authority paperwork.

[5] At some point during the proceedings, the trial court began hearing the two claims together based on the fact they involved the same defendants, including ONI, and arose from the same accident. While the cases were not officially consolidated at trial, the appealed order is captioned to address ONI's motions for summary judgment in both cases and only one appellate cause number exists.

and harm involved without regard to the facts of the actual occurrence." *Id*. at 394. Based thereon, ONI argued the evidentiary material designated as part of Accident Parties' responses to ONI's earlier motion for summary judgment

> focused on the actual facts of the transactions and events that Plaintiffs contend led to the accident at issue. Under Indiana law as articulated by *Goodwin*, Plaintiffs' argument was wrong as a matter of law, and the extensive evidentiary material Plaintiffs relied upon to oppose summary judgment was immaterial and irrelevant on summary judgment.

(App. Vol. XVIII at 59.) In response, the Accident Parties filed a motion opposing ONI's renewed motion for summary judgment and argued a duty of care existed under *Goodwin*, ONI assumed a duty, ONI owed a statutory duty of care, and ONI was liable for aiding, abetting, and conspiracy.

[12] The trial court held a hearing on ONI's renewed motion for summary judgment on April 20, 2017, and summarily denied ONI's renewed motion for summary judgment on April 28, 2017. On June 14, 2017, the trial court certified its denial for interlocutory appeal under Indiana Rule of Appellate Procedure 14(B)(1)(c)(ii). On August 11, 2017, our court accepted jurisdiction over the matter and granted the parties' motions to consolidate the actions for appeal.

# Discussion and Decision

## Standard of Review

[13] We review summary judgment using the same standard as the trial court: summary judgment is appropriate only where the designated evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Rogers v. Martin*, 63 N.E.3d 316, 320 (Ind. 2016). All facts and reasonable inferences are construed in favor of the non-moving party. *City of Beech Grove v. Beloat*, 50 N.E.3d 135, 137 (Ind. 2016). Where the challenge to summary judgment raises questions of law, we review them *de novo*. *Rogers*, 63 N.E.3d at 320.

## Existence of Common Law Duty

[14] To prevail on a claim of negligence, the Accident Parties must demonstrate (1) ONI owed them a duty; (2) ONI breached that duty by allowing its conduct to fall below the applicable standard of care; and (3) ONI's breach of duty proximately caused Accident Parties' injuries. *See Rogers*, 63 N.E.3d at 321 (setting forth elements of negligence). Absent a duty, there can be no breach. *Id*.

[15] Whether a duty exists is a question of law for the court to decide. *Id*. at 321. We therefore review *de novo* whether ONI owed the Accident Parties a duty. *See id*. at 320 (reviewing existence of duty *de novo*). In determining whether a duty exists when it has not been established by law, we use a three-part balancing test under which we consider: (1) the relationship between the

parties, (2) the reasonable foreseeability of harm, and (3) public policy concerns. *Goodwin,* 62 N.E.3d at 387. Based on our Indiana Supreme Court's holding in *Goodwin*, ONI argues it did not owe a common law duty to the Accident Parties.

[16] In *Goodwin*, our Indiana Supreme Court set forth a new standard by which a court should review the reasonable foreseeability of harm when considering whether a party owed a duty to another party in a negligence action. ONI's motion for summary judgment argued the holding regarding foreseeability in *Goodwin* changed how the trial court should consider the evidence of foreseeability designated by the Accident Parties and, under *Goodwin*, ONI was entitled to summary judgment. We agree.

[17] In *Goodwin*, three patrons of Yeakle's Sports Bar and Grill, Goodwin, Randolph, and Washington (collectively "Goodwin"), sued Yeakle's after all three were injured during an altercation with Carter, another bar patron. Goodwin argued Yeakle's was negligent for "failing to provide security for its patrons; . . . failing to search Rodney Carter for weapons; . . . [and] failing to warn [P]laintiffs that Rodney Carter was armed and dangerous." *Goodwin*, 62 N.E.3d at 386 (ellipses in original). Yeakle's filed for summary judgment arguing, "Carter's criminal acts were unforeseeable and thus [Yeakle's] had no duty to anticipate and take steps to prevent Carter's conduct." (*Id*.) The trial court granted Yeakle's motion for summary judgment and Goodwin appealed.

Our Indiana Supreme Court concluded, as an initial matter, that foreseeability is different when considering duty than when considering proximate cause. *Id.* at 389. To that end, the Court stated, "[i]n sum, because foreseeability is - in this particular negligence action - a component of duty, and because whether a duty exists is a question of law for the court to decide, the court must of necessity determine whether the criminal act at issue here was foreseeable." *Id.*

To illustrate how a trial court should examine the issue of foreseeability, our Indiana Supreme Court relied upon the West Virginia Supreme Court's opinion in *Strahin v. Cleavenger*, 603 S.E.2d 197 (2004), in which that court held:

> [A] court's task - in determining "duty" - is not to decide whether a *particular* plaintiff's injury was reasonably foreseeable in light of a particular defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party. The jury, by contrast, considers "foreseeability" . . . [in] more focused, fact-specific settings.

*Id.* at 207 (emphasis and ellipsis in original). To further clarify, the *Goodwin* Court adopted language from the Court of Appeals opinion *Goldsberry*: "the foreseeability component of proximate cause requires an evaluation of the facts of the actual occurrence, while the foreseeability component of duty requires a more general analysis of the broad type of plaintiff and harm involved, without regard to the facts of the actual occurrence." *Goodwin*, 62 N.E.3d at 391 (quoting *Goldsberry v. Grubbs*, 672 N.E.2d 475, 479 (Ind. Ct. App. 1996), *trans. denied*).

[20]   Many subsequent cases have interpreted *Goodwin*, but these cases have dealt mostly with premises liability. *See, e.g., Polet v. ESG Sec.*, 66 N.E.3d 972, 983 (Ind. Ct. App. 2016) (security company hired by the Indiana State Fair did not owe a duty of care to those patrons who were injured as part of a stage collapse due to high winds because the court did "not believe that security firms routinely contemplate that a stage might collapse"); *see also Neal v. IAB Fin. Bank*, 68 N.E.3d 1114, 1122 (Ind. Ct. App. 2017) (Bank employees who helped a man with a flat tire did not owe Neal a duty because "[t]o require every individual who undertakes to aid a stranded motorist to safeguard against the possibility that motorist may be intoxicated would be requiring those individuals to ensure the safety of all motorists. We do not believe reasonable persons would recognize such a duty exists."), *trans. denied; and see Jones v. Wilson*, 81 N.E.3d 688, 695 (Ind. Ct. App. 2017) (Wilson, the promoter of a wrestling event at a county fairground owed no duty of care to Jones, a person injured by a third party in the parking lot of the event, because "the harm inflicted on Jones was not normally to be expected, and thus not foreseeable").

[21]   However, our court recently applied *Goodwin* to facts similar to those before us today. *Estate of Staggs by and through Coulter v. ADS Logistics Co., LLC*, 64A03-1708-CT-1961 (Ind. Ct. App. May 14, 2018), *trans. pending*. In that case, Staggs and other plaintiffs (collectively, "Staggs") were injured or killed when a large steel coil came unsecured from the truck on which it was loaded and collided with several vehicles. Like in the case before us, the plaintiffs sued a number of parties for negligence, alleging each played a small part in the accident.

[22] ADS had a contract with ArcelorMittal, USA, LLC ("Mittal"), to house Mittal's steel coil. Mittal sold steel coils to Eagle Steel Products, Inc. ("Eagle"), who hired Kendall Transportation to haul the steel coil from the ADS warehouse to Eagle's location in Ohio. Kendall Transportation contracted with Israel Rankin, who owned and operated a tractor-trailer under the motor carrier authority of Kendall Transportation, to drive the tractor-trailer that would transport the steel coil.

[23] On January 11, 2010, Rankin arrived at ADS to pick up the steel coil. "Kendall Transportation's dispatcher and Rankin controlled the means and methods of delivering a load to a customer. Rankin had been trained how to secure a steel coil through previous employment and through his work at Kendall Transportation." *Id*. at *1. The crane operator at ADS followed Rankin's directions regarding "where and how to place the steel coil on the flatbed." *Id*. After the crane operator loaded the coils on the flatbed, Rankin secured the coils. ADS, Kendall Transportation representatives, and Rankin testified "that it is the driver's responsibility to secure the load onto the driver's vehicle." *Id*. Rankin left the ADS facility, stopped for lunch, and then was involved in the accident.

[24] The appeal before our court concerned Staggs' negligence claim against ADS, to which the trial court granted summary judgment in favor of ADS, "finding as a matter of law that ADS had no duty to the plaintiffs 'regarding securing the load to the tractor trailer that was involved in this incident.'" *Id*. at *2. Our court affirmed the trial court's grant of summary judgment in favor of ADS

because, based on the analysis set forth in *Goodwin*, ADS did not owe a common law duty to Staggs. We examine each of these factors through the lens of *Staggs* and apply them to the case before us.

## *Relationship Between the Parties*

[25] Under certain circumstances, our Indiana Supreme Court has held a sufficient relationship exists between strangers to impose a common law duty. *See, e.g., Gariup Const. Co., Inc. v. Foster*, 519 N.E.2d 1224, 1229 (Ind. 1988) (Gariup, who hosted a party during which its employee, Orner, became intoxicated, had a duty to exercise reasonable care to Foster, who was injured when Orner drove intoxicated); *see also Picadilly, Inc. v. Colvin*, 519 N.E.2d 1217, 1220 (Ind. 1988) ("there is a common law action against those unlawfully selling or furnishing intoxicating liquor in favor of third persons subsequently injured by the acts of the purchasers as a result of their intoxicated condition") (quoting *Whisman v. Fawcett*, 470 N.E.2d 73, 80 (Ind. 1984)). ONI contends there is no relationship between ONI and the Accident Parties. We agree.[6]

---

[6] The Accident Parties also note a relationship between parties that creates a duty can exist by virtue of a statute. *See*, *e.g.*, *Goldsberry*, 672 N.E.2d at 480 (holding duty existed based on relationship created by Indiana Code section 8-20-1-28). Here, the Accident Parties argue Indiana state and federal regulations create a relationship between ONI and the Accident Parties. Indiana Code section 8-2.1-24-18(a) incorporates 49 CFR § 385.306 and 49 CFR § 390.13 into Indiana law. 49 CFR § 385.306 states: "A carrier that furnishes false or misleading information, or conceals material information in connection with the registration process, is subject to . . . [a]ssessment of the civil and or criminal penalties prescribed in 49 USC 521 and 49 USC chapter 149." 49 CFR § 390.13 states, "No person shall aid, abet, encourage, or require a motor carrier or its employees to violate the rules of this chapter."

However, ONI did not provide false or misleading information during the registration process. The Accident Parties make much of the information passed and actions taken by ONI in the procurement of insurance for C&K; however, the trial court ruled ONI did not make material misrepresentations in that process and that ruling was not challenged. Additionally, ONI did not have oversight of the OP-1, on which Hackney

In *Staggs*, our Court held:

> As for the relationship between ADS and the Appellants, there is none. ADS's only involvement was to warehouse the steel coil and then load it onto Rankin's flatbed per Rankin's instructions. ADS also had no contractual relationship with Rankin, Kendall Transportation, or Eagle Steel, nor did it have any right of control over Rankin's acts, including the securing of the coil onto the flatbed. The accident did not occur on ADS's property, it did not involve ADS's employees or vehicles, and it did not involve anyone with whom ADS has a contractual relationship.

*Staggs*, *slip op*. at \*4. The same can be said here.

It is undisputed that there is no direct relationship between ONI and the Accident Parties. It is true ONI was involved with the procurement of insurance for C&K; however, the trial court found, when granting summary judgment in favor of ONI, that ONI did not make any material misrepresentations to Occidental in the process of procuring insurance for C&K. ONI also supplied information to the federal government to assist C&K in obtaining an operating license, though only insomuch as to indicate whether C&K had insurance. The accident did not happen on ONI's land, nor did it involve an ONI employee or vehicle. Like in *Staggs*, ONI offered a service to a

misrepresented his company history. The only actions at issue here are ONI's statement for the BMC-91X, in which ONI was asked if C&K had insurance. It is undisputed ONI answered in the affirmative, as C&K had a policy with Occidental.

client to aid in the procurement of another service, after which an accident occurred. We hold this factor weighs against a duty.

### *Foreseeability*

[28] Based on *Goodwin*'s holding, ONI filed a renewed motion for summary judgment in which it argued:

> In opposing ONI's prior summary judgment motion, Plaintiffs submitted reams of evidentiary material that they purported to summarize in a 75-page fact statement supporting their argument that it was reasonably foreseeable that ONI's conduct would cause harm to the Plaintiffs. This evidentiary material focused on the actual facts of the transactions and events that Plaintiffs contend led to the accident at issue. Under Indiana law articulated by *Goodwin*, Plaintiffs' argument was wrong as a matter of law, and the extensive evidentiary material Plaintiffs relied upon to oppose summary judgment was immaterial and irrelevant on summary judgment.

(App. Vol. XVIII at 59) (internal citations omitted). ONI suggested the proper application of *Goodwin* to the facts in the case with the Accident Parties:

> When applied here, the *Goodwin* analytical framework also leads to the conclusion that ONI owed no duty to Plaintiffs as a matter of law. The "broad type of plaintiff" involved in this case is any motorist traveling on a public road. The harm involved is the risk that an insured driver, once able to drive legally because he has obtained insurance, will injure such motorists in automobile accidents. As in *Goodwin*, although any client of any insurance agency is potentially likely to be involved in an automobile accident, insurance agents do not routinely contemplate that a client will independently operate its own vehicle in a manner that will cause an accident.

(*Id*. at 63.)

Similarly, on appeal, ONI argues its role as an insurance agent is not "to determine whether their clients deserve coverage, or at what price." (Br. of Appellants at 25.) Instead, it contends, insurance underwriters "evaluate the risk of those clients being involved in accidents," (*id*.), and then the insurance companies make the decision whether to provide insurance to a client. ONI argues it is merely "an intermediary" in this process. (*Id*.) ONI asserts, to "impose a duty on insurance agents like ONI to safeguard against the possibility that one of their clients will harm a member of the general public would make insurance agents the 'insurer' of the general public's safety." (*Id*. at 26.)

In *Staggs*, our Court undertook a foreseeability analysis of duty as prescribed in *Goodwin*: "[T]he foreseeability component of duty requires a more general analysis of the broad type of plaintiff and harm involved, without regard to the facts of the actual occurrence." *Goodwin*, 62 N.E.3d at 389 (quoting *Goldsberry*, 672 N.E.2d at 479). The *Staggs* court then considered the question of what type of broad plaintiffs, defendants, and harm were involved. In that case, the broad plaintiff was identified as "motorists," the defendants were "a warehousing entity," and the harm was "a vehicular accident after commercial cargo became unsecured and struck the motorists." *Staggs*, *slip op*. at *4. Based on those parameters, the *Staggs* Court concluded:

> As a general matter, of course it is foreseeable that large and
> heavy cargo, which is secured to a flatbed trailer, could become

unsecured on a public roadway and cause injuries to nearby motorists. But the broad type of defendant here—a warehousing entity—would have no reason to foresee that its own conduct, in warehousing the cargo or in loading the cargo onto another entity's vehicle, at the instruction of the other entity's driver, would result in harm to motorists. Put another way, an entity that has no role whatsoever in securing the cargo to the flatbed could not foresee that its own actions would result in that cargo becoming unsecured. This factor weighs against a finding of duty.

*Id.*

[31] The same rationale can be applied to the facts before us now. The broad plaintiffs here are motorists, the defendants are an insurance agency and its agent, and the type of harm involved was a multi-vehicle collision caused by faulty brakes on a large tractor-trailer. We hold the insurance agency and its agent, who had no role whatsoever in the decision to put the vehicle on the road in its condition, could not foresee that its actions relevant to this matter, which are only answering questions regarding whether their client had insurance coverage,[7] would result in injury to a motorist. This factor weighs against finding duty.

---

[7] As the trial court found and concluded ONI did not make misrepresentations to Occidental in the procurement of the insurance policy for C&K, we need not evaluate whether or how the actions taken prior to the issuance of the insurance policy may have factored into this foreseeability analysis.

[32] The final factor in the *Goodwin* test is the public policy consideration of "who is, or should be, in the best position to prevent injury and how society should allocate the costs of such injury." *Cox v. Stoughton Trailers, Inc.*, 837 N.E.2d 1075, 1080 (Ind. Ct. App. 2005). The *Staggs* Court held, "[i]t is apparent that the party best suited to prevent an injury to motorists with respect to commercial cargo secured to a flatbed trailer is the entity responsible for securing, hauling, and checking the cargo during the drive." *Staggs*, *slip op*. at *5. In *Staggs*, those entities were the driver Rankin and his employer Kendall Transportation,. Here, the entities best suited to prevent injury to a motorist were Hackney, who drove the truck that caused the accident even though he knew of its defective brakes, and C&K, which owned the truck. As ONI had no control over the actual means by which the accident occurred, this factor weighs against finding ONI had a duty to the Accident Parties.

[33] All three of the factors we are to consider when determining whether one party owed a common law duty to another party weigh in favor of holding ONI did not owe a duty to the Accident Parties. Therefore, we conclude the trial court erred when it denied ONI's renewed motion for summary judgment on the issue of whether ONI owed the Accident Parties a common law duty.

*Assumed Duty*

[34] In *Yost v. Wabash College*, 3 N.E.3d 509 (Ind. 2014), our Indiana Supreme Court set forth the standard of review for determining assumed duty: "[T]he concept

of assumed duty is expressed in the Restatement and requires a focus upon the specific services undertaken. While an actor may be accountable for negligence in the performance of certain services actually undertaken, such liability does not extend beyond the undertaking." *Id*. at 521. The Restatement referenced therein is Restatement (Third) of Torts: Physical and Emotional Harm § 42 (2012), which states:

> An actor who undertakes to render services to another and who knows or should know that the services will reduce the risk of physical harm to the other has a duty of reasonable care to the other in conducting the undertaking if:
>
> (a) the failure to exercise such care increases the risk of harm beyond that which existed without the undertaking, or
>
> (b) the person to whom the services are rendered or another relies on the actor's exercising reasonable care in the undertaking.

*Id*. at 517. "Thus, to impose liability resulting from breach of assumed duty, it is essential to identify and focus on the specific services undertaken. Liability attaches only for the failure to exercise reasonable care in conducting the 'undertaking.'" *Id*.

In *Yost*, a college student, Yost, sued the college he attended, Wabash, for negligence after Yost was injured in a fraternity hazing incident. Yost argued Wabash assumed a duty of care because it engaged in educational outreach programs to encourage appropriate student behavior and curb hazing. Our Indiana Supreme Court rejected this argument:

[T]here is no direct evidence or reasonable inferences in this case to establish that Wabash deliberately and specifically undertook to control and protect Yost from the injuries he sustained or to generally prevent its students from engaging in injurious private conduct toward each other. Nor is there evidence that Yost in any way relied upon Wabash to take action in furtherance of the claimed gratuitously assumed duty. Wabash's policies and investigations with respect to hazing do not rise to the level of a specific undertaking that demonstrate a special relationship between Yost and Wabash so as to justify the imposition upon Wabash of a gratuitously assumed duty to protect Yost from hazing. To the contrary, colleges and universities should be encouraged, not disincentivized, to undertake robust programs to discourage hazing and substance abuse. To judicially impose liability under a theory of gratuitously assumed duty is unwise policy and should be cautiously invoked only in extreme circumstances involving a negligently performed assumed undertaking - circumstances not here present.

*Id*. at 518.

[36] Our Indiana Supreme Court further clarified its analysis of assumed duty when it interpreted Yost as part of *Doe #1 v. Indiana Dept. of Child Servs.*, 81 N.E.3d 199 (Ind. 2017). In *Doe #1*, an individual who reported alleged abuse to the Department of Child Services ("DCS") sued DCS for negligently disclosing his identity, which resulted in harassment to his family. Doe #1 argued DCS assumed a duty of care when the employee told Doe #1 that his identity was "confidential. Nobody will find out." *Id*. at 201. The employee's statement was consistent with established DCS policy. Our Indiana Supreme Court reviewed *Yost* and a similar opinion, *Lanni v. NCAA*, 42 N.E.3d 542, 553 (Ind. Ct. App. 2015), in which our court held merely communicating a rule - that is,

the boundaries of a fencing area during a fencing tournament - was not an "undertaking" which triggered an assumed duty. The Court analogized *Yost* and *Lanni* to the facts in *Doe #1*:

> And that is all the DCS hotline employee did here. By informing John that his report was confidential, the employee did no more than the college in *Yost* or the NCAA in *Lanni* - she simply communicated an existing rule. Granted, the employee did summarize Section 2 using her own words: "[I]t's confidential. Nobody will find out." But given the demanding standard for "specific undertaking," and given our caution in finding gratuitously assumed duties, we cannot read the hotline worker's words as an offer to take on additional common-law liability.

*Doe #1*, 81 N.E.3d at 206.

[37] Here, ONI's "undertakings" were helping C&K obtain insurance, engaging C&K in training, and answering questions truthfully concerning whether C&K had insurance in order for C&K to obtain its federal operating authority. ONI contends those undertakings were provided to C&K, not the Accident Parties, and thus no assumed duty exists "because Plaintiffs had no connection whatsoever to ONI's provision of those services." (Br. of Appellants at 31.) We agree.

[38] Much like Wabash College in *Yost*, ONI attempted to supply Hackney with tools he could use to rehabilitate the safety rating of HT. ONI scheduled a mock audit and sent a representative to train HT employees regarding the new safety standards, which would focus on past and present driving records of the operator. Additionally, like in *Doe #1*, ONI employees repeatedly informed

Hackney of the new procedures and how they would affect his business. However, this diligence does not rise to an assumed duty under *Yost* because, like in that case, ONI did not oversee or control Hackney's behavior, here driving a vehicle with faulty brakes, following these undertakings. *See Yost*, 3 N.E.3d at 518 (university provided educational materials, but did not undertake to protect or control Yost or other students from engaging in injurious behavior). ONI did not assume a duty to the Accident Parties, and the trial court should have entered summary judgment for ONI on this theory of liability. *See id.*

## Joint Liability for Tortious Conduct

[39] As part of the actions against ONI, the Accident Parties claimed "ONI knowingly, intentionally, and fraudulently aided and abetted C&K to become a chameleon carrier." (Br. of Appellees at 43.) The Accident Parties also alleged ONI conspired with C&K to do the same. However, the Accident Parties did not identify the tort it claimed ONI aided and abetted or conspired to commit, and thus no action can accrue. *See Hefferman v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006) (aiding and abetting is not an independent tort; a person who aids and abets is liable for the tort itself); *and see Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228, 1234 (Ind. 1994) ("civil conspiracy is not an independent cause of action"). Therefore, we conclude the trial court erred when it denied ONI's renewed motion for summary judgment on this issue.

# Conclusion

[40] ONI did not owe the Accident Parties a common law duty, ONI did not assume a duty, and no statutory duty existed. Nor can ONI be liable for aiding, abetting, or conspiring when the Accident Parties did not allege a corresponding tort ONI was to aid, abet, or conspire to commit. Because all those theories of liability fail, the trial court erred when it denied ONI's motion for summary judgment. Accordingly, we reverse and remand for proceedings consistent with this opinion.

[41] Reversed and remanded.

Riley, J., and Altice, J., concur.