

FILED

Aug 15 2017, 5:26 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Robert M. Oakley
Daniel K. Dilley
Dilley & Oakley, P.C.
Carmel, Indiana

ATTORNEY FOR APPELLEE

Keith A. Kinney
Duffin, Hash & Coates, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Crystal Jones,

*Appellant-Plaintiff,*

v.

Jerry Wilson d/b/a Hoosier Pro
Wrestling,

*Appellee-Defendant.*

August 15, 2017

Court of Appeals Case No.
03A04-1701-PL-233

Appeal from the Bartholomew
Circuit Court

The Honorable
Stephen R. Heimann, Judge

Trial Court Cause No.
03C01-1502-PL-531

**Kirsch, Judge.**

[1]     Jerry Wilson d/b/a Hoosier Pro Wrestling ("Wilson" or "HPW") promoted
and presented a wrestling event, which was held in a building at the
Bartholomew County Fairgrounds. Crystal Jones ("Jones") attended the
wrestling event, and as she walked through the parking lot to her car at night,
she was assaulted by an unknown assailant. Jones brought a negligence action

against Wilson and Bartholomew County 4-H Fair, Inc., and, as is relevant here, the trial court granted summary judgment in favor of Wilson.[1] Jones appeals, raising the following restated issue: whether the trial court properly determined that Wilson did not owe a duty to Jones to protect her from the criminal acts of a third person that occurred in the parking lot.

We affirm.

## Facts and Procedural History

On June 7, 2014, Jones attended a live wrestling event that took place in the Family Arts building at the Bartholomew County Fairgrounds. The day before, Wilson entered into a contract with Bartholomew County 4-H Fair, Inc., specifically a Privilege Agreement ("the Agreement"), under which Wilson rented the Family Arts building for the wrestling event. *Appellant's App. Vol. II* at 33.

Jones arrived at approximately 5:30 p.m., and at around 11:00 p.m., she left the building, although the event was not yet over, to get some medication from her car. Jones stated that she used her flashlight on her cell phone to illuminate her path as the lights in the parking lot were not illuminated. As she walked alone

---

[1] We note that, according to the record before us, Jones's claims against Bartholomew County 4-H Fair, Inc. were resolved by settlement, and Bartholomew County 4-H Fair, Inc. was dismissed from the action in February 2017.

through the parking lot to her vehicle, Jones was attacked by an unknown assailant and suffered injuries.

[5] On February 2, 2015, Jones filed a complaint against Wilson and Bartholomew County 4-H Fair, Inc., alleging negligence. *Id.* at 7-10. She asserted that it was dark outside when she left the Family Arts building, she saw no security personnel around the immediate exterior of the building or in the parking lot, the lighting in the parking lot was not operating the night she was attacked, and Wilson "as the host and promoter of the event had a duty to Plaintiff, with respect to the maintenance and repair of facility and its condition with regard to the safety of attendees such as Plaintiff." *Id*. at 9. Jones claimed that Wilson breached his duty and that the lack of lighting, lack of security, and presence of alcohol proximately caused her injuries.

[6] As is relevant here, Wilson filed a motion for summary judgment, later supplemented, asserting that he had no duty to Jones while she was in the parking lot to protect her from unforeseeable criminal acts of a third party. Wilson further argued that the Agreement did not place any obligation on Wilson to provide security for the parking areas around the building or to maintain the lighting in the parking area, which was owned by Bartholomew County 4-H Fair, Inc. *Id.* at 13-17, 24-28. Wilson designated the following evidence: (1) the Agreement; (2) Jones's complaint; (3) and excerpts of the deposition of Larry Fisher ("Fisher"), who was the president of the Bartholomew County Fair Board. Asserting that he owed no duty to Jones, Wilson claimed that he was entitled to judgment as a matter of law.

[7] Jones filed her response to Wilson's summary judgment motion, and, in support, she relied upon the following evidence: portions of Wilson's deposition; Jones's responses to interrogatories; the complaint; portions of Fisher's deposition; and the Agreement.[2] In opposing summary judgment, she argued that summary judgment was not proper because material facts were in dispute as to whether the lights in the parking lot were functioning. She also asserted that Wilson had a duty to take reasonable precautions to protect business invitees, such as Jones, from foreseeable criminal acts and that, under the circumstances here, the attack was reasonably foreseeable where Jones had to walk through "a relatively secluded and unlit, grassy parking area." *Id*. at 23. She maintained that "this absence of exterior lighting is a condition of the land which contributed to the likelihood of the attack on [] Jones." *Id*. at 28. Following a hearing, the trial court issued an order granting Wilson's motion for summary judgment.[3] Jones now appeals.

---

[2] Jones does not include in her appendix any designation of evidence that she may have filed. However, we observe that Plaintiff's Response to Defendant's Motion for Summary Judgment ("Response") cites to and quotes from Jerry Wilson's deposition, Jones's responses to interrogatories, the complaint, Larry Fisher's deposition, and the Agreement; she identifies those materials in her Response as Exhibits A-E, respectively. *Appellant's App. Vol. II* at 11-24. Jones provides some, but not all, of those materials in her Appendix. Jones also includes in her Appendix excerpts from her own deposition, which is marked as Exhibit 3, *see id.* at 34-40, but it is not clear from the record whether it was Plaintiff's or Defendant's Exhibit 3, what document it was an exhibit to, and if it was designated evidence considered by the trial court. We also note that page 2 of *Appellant's Appendix Vol. II* appears to be a cover page to an "Exhibit Volume," but no exhibit volume is included in the record before us.

[3] We note that the trial court's order granting summary judgment did not include specific findings of fact and conclusion of law in support of its judgment. *Appellant's App. Vol. II* at 5-6. Specific findings are not required in summary judgment proceedings and are not binding on appeal. *AutoXchange.com. Inc. v. Dreyer and Reinbold, Inc.*, 816 N.E.2d 40, 48 (Ind. Ct. App. 2004).

# Discussion and Decision

[8] When reviewing a grant or denial of a motion for summary judgment our well-settled standard of review is the same as it is for the trial court: whether there is a genuine issue of material fact, and whether the moving party is entitled to judgment as a matter of law. *Wagner v. Yates,* 912 N.E.2d 805, 808 (Ind. 2009). The party moving for summary judgment has the burden of making a prima facie showing that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Goodwin v. Yeakle's Sports Bar & Grill, Inc.,* 62 N.E.3d 384, 386 (Ind. 2016). Once these two requirements are met by the moving party, the burden then shifts to the non-moving party to show the existence of a genuine issue by setting forth specifically designated facts. *Id.* Any doubt as to any facts or inferences to be drawn therefrom must be resolved in favor of the non-moving party. *Id.* Summary judgment should be granted only if the evidence sanctioned by Indiana Trial Rule 56(C) shows that there is no genuine issue of material fact and the moving party deserves judgment as a matter of law. *Freidline v. Shelby Ins. Co.,* 774 N.E.2d 37, 39 (Ind. 2002). The party appealing the grant of summary judgment has the burden of persuading this court that the trial court's ruling was improper. *Hoosier Mountain Bike Ass'n, Inc. v. Kaler*, 73 N.E.3d 712, 716 (Ind. Ct. App. 2017) (citing *First Farmers Bank & Trust Co. v. Whorley*, 891 N.E.2d 604, 607 (Ind. Ct. App. 2008), *trans. denied*). Where the challenge to summary judgment raises questions of law, we review them de novo. *Rogers v. Martin*, 63 N.E.3d 316, 320 (Ind. 2016).

[9] To recover in negligence, the plaintiff must establish: (1) a duty on the part of the defendant to conform his conduct to a standard of care arising from his relationship with the plaintiff; (2) a failure on the part of the defendant to conform his conduct to the requisite standard of care; and (3) an injury to the plaintiff proximately caused by the breach. *Nance v. Holy Cross Counseling Grp.*, 804 N.E.2d 768, 771 (Ind. Ct. App. 2004), *trans. denied*. Absent a duty, there can be no breach and, therefore, no recovery in negligence. *Id*. at 772. Whether a duty exists is a question of law for the court to decide. *Goodwin*, 62 N.E.2d at 389.

[10] In this case, the threshold inquiry is whether Wilson owed a duty to Jones, an invitee, to protect her from a criminal attack by an unknown assailant while she was in the parking lot around 11:00 p.m., having exited the building that Wilson had rented from the fairgrounds for the wrestling event.[4] As a preliminary matter, we observe that the record before us indicates that Wilson rented the Family Arts building on the Bartholomew County Fairgrounds, but nothing establishes that any duty Wilson may have had to Jones that night extended beyond the Family Arts building and into the grassy area used for

---

[4] "'Under Indiana law, an invitee is a person who goes onto the land of another at the express or implied invitation of the owner or occupant either to transact business or for the mutual benefit of invitee and owner or occupant.'" *Winfrey v. NLMP, Inc.*, 963 N.E.2d 609, 612 (Ind. Ct. App. 2012) (quoting *Markle v. Hacienda Mexican Rest.,* 570 N.E.2d 969, 971 (Ind. Ct. App. 1991)). "'A licensee is one who enters premises of another for his own convenience, curiosity, or entertainment.'" *Id.* There appears to be no disagreement between the parties that Jones was an invitee when she was injured.

parking. On that point, Wilson argued to the trial court during summary judgment proceedings,

> [Wilson] had no duty to do anything with regard to the lighting. The only thing that [Wilson] was responsible for that evening was the Family Arts building. [Wilson] did not rent the parking lot, did not receive payment from people who parked in the parking lot, and had no responsibility to see that the lights were working. That was the Fair's responsibility.

*Appellee's App*. *Vol. II* at 21. However, on appeal, Wilson states, perhaps concedes, "Wilson does not dispute that Jones was a business invitee of Wilson when she was attacked, even though she had left the building." *Appellee's Br*. at 7. Assuming without deciding that any duty that Wilson owed to Jones would have extended to the parking lot, we turn to the issue of whether, based on existing caselaw concerning a landowner's duty to protect invitees against attacks by third parties, Wilson had a duty in this case to protect Jones against the criminal attack.

[11] Necessary to our decision today is consideration of, in particular, two 2016 Indiana Supreme Court cases, namely: *Rogers v. Martin* and *Goodwin v. Yeakle's Sports Bar & Grill, Inc*. These cases "redrew the premises liability landscape[.]" *Hoosier Mountain Bike Ass'n*, 73 N.E.3d at 716 n.4. The *Goodwin* and *Rogers* cases reviewed the evolution of premises liability law in Indiana, initially observing the general duty a landowner owes to an invitee: a landowner must exercise reasonable care for the invitee's protection while the invitee is on the premises. *Rogers*, 63 N.E.3d at 320. However, "although landlords owe

invitees a well-established 'duty to protect,' courts must look at one critical element before extending that duty to cases where an invitee's injury occurs not due to a dangerous condition of the land but due to some harmful activity on the premises. That element is foreseeability." *Id*. at 324. That is, while landowners have a duty to take reasonable precaution to protect their invitees from criminal attacks by third parties, there is a foreseeability component in that analysis, requiring the trial court to decide, in the context of duty, whether the criminal act was foreseeable.

[12] Our Supreme Court distinguished the foreseeability component in the context of duty from the foreseeability component in the context of proximate cause, stating: "'[T]he foreseeability component of proximate cause requires an evaluation of the facts of the actual occurrence, while foreseeability as a component of duty involves a lesser inquiry which requires a more general analysis of the broad type of plaintiff and harm involved, without regard to the facts of the actual occurrence.'"[5] *Goodwin*, 62 N.E.3d at 391 (quoting *Goldsberry v. Grubbs*, 672 N.E.2d 475, 479 (Ind. Ct. App. 1996), *trans. denied*); *see also Rogers*, 63 N.E.3d at 325 (foreseeability in duty context is general threshold determination that "should focus on the general class of persons of which the plaintiff was a member and whether the harm suffered was of a kind normally

---

[5] In reaching this distinction, the *Goodwin* Court specifically rejected the use of the "totality of the circumstances" test when analyzing foreseeability analysis in the context of duty. *See Goodwin v. Yeakle's Sports Bar & Grill, Inc.,* 62 N.E.3d 384, 389 (Ind. 2016) ("[W]e now recognize that although the 'totality of the circumstances' test is useful in determining foreseeability in the context of proximate causation, it is inappropriate when analyzing foreseeability in the context of duty.")

to be expected—without addressing the specific facts of the occurrence"). The *Goodwin* Court further clarified the trial court's task when determining whether a criminal act was foreseeable:

> But because almost any outcome is possible and can be foreseen, the mere fact that a particular outcome is "sufficiently likely" is not enough to give rise to a duty. Instead, for purposes of determining whether an act is foreseeable in the context of duty we assess "whether there is some probability or likelihood of harm that is serious enough to induce a reasonable person to take precautions to avoid it."

*Goodwin*, 62 N.E.3d at 392 (quoting *Satterfield v. Breeding Insulation, Co.*, 266 S.W.3d 347, 367 (Tenn. 2008)).

[13] Here, in support of his contention that the criminal assault on Jones was not foreseeable and that he did not owe a duty to Jones, Wilson submitted evidence showing that he rented the Family Arts building for one night from Bartholomew County 4-H Fair, Inc., as he had done on prior occasions, that the Agreement did not place obligations on Wilson to provide security for parking areas around the Family Arts building or take care of the lighting outside of the building, and that, Fisher, the Fair Board president, was not aware of any prior such criminal attacks in the twenty-plus years that he had been involved with the organization. Wilson argues that, applying the foreseeability test of *Goodwin* and *Rogers*, which requires an evaluation of (1) the broad type of plaintiff and (2) the broad type of harm, without consideration of the actual facts, he did not owe a duty to Jones. Specifically, Wilson argues,

the broad type of plaintiff in this case was a paying spectator at a wrestling match and the broad type of harm was a random criminal attack, the type of which had not occurred in decades, occurring outside the building that Wilson had rented. Wilson argues that its designated evidence showed that any attack was not foreseeable, he did not owe a duty to Jones in that situation, and the trial court properly granted summary judgment in favor of Wilson.

[14] Jones argues that, while foreseeability plays a role in the analysis of duty in *some* cases, it does not in her particular case. Her argument is that her injuries and claim relate to a condition of the land, and in that situation, a foreseeability analysis in the context of duty is neither warranted nor appropriate. *Appellant's Br*. at 12-13 (referring to *Rogers*, 63 N.E.3d at 321). Jones is correct that in cases "[w]hen a physical injury occurs as a result of a condition on the land," the Restatement (Second) of Torts section 343 "accurately describe[s] the landowner-invitee duty,"[6] and a foreseeability analysis as to duty is not required. *See Rogers*, 63 N.E.3d at 322-23 (distinguishing cases where injury

---

[6] The Restatement (Second) of Torts section 343 provides:

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

*Rogers v. Martin*, 63 N.E.3d 316, 322 (Ind. 2016) (quoting *Burrell v. Meads*, 569 N.E.2d 637, 639-40 (Ind. 1991)).

results from "a condition on the land" from those cases in which invitees suffer injuries "due to activities on a landowner's premises," in which "foreseeability is a necessary inquiry in determining whether the landowner's duty of reasonable care extends to the particular circumstances"). Jones urges that her case falls into the former category – injury due to a condition on the land – such that "the element of duty has been declared or otherwise articulated," and, accordingly, there is no need to engage in a foreseeability analysis as to duty. *Appellant's Br*. at 12-13. More specifically, Jones's position is that the lack of lighting is a condition of the land that contributed to the attack, and, therefore, the duty is clearly established and the foreseeability inquiry goes only to a proximate cause inquiry. Jones maintains that Wilson owed a duty to Jones and that the trial court erred when it granted summary judgment to Wilson because proximate cause issues remained for the factfinder.

[15] In response, Wilson urges that the parking lot lights are not "a condition of the land," pointing out that an assailant injured her, not the parking lot lights, and that she was not injured when she stepped in a hole or otherwise injured because of some condition of the land, and, therefore, this case is not a "condition of the land" case where duty has already been declared or articulated. We agree with Wilson in this regard. Jones's injuries resulted from the conduct of a third person, and we find that the foreseeability test outlined in *Goodwin* and *Rogers* must be applied to see if a duty exists at all. Under that test – examining (1) the broad type of plaintiff and (2) the broad type of harm, without consideration of the actual facts – we find that the harm inflicted on

Jones was not normally to be expected, and thus not foreseeable, and Wilson did not owe a duty to Jones. *See Goodwin*, 62 N.E.3d at 393-94 (recognizing that, although bars "can often set the stage for rowdy behavior," bar owners do not routinely contemplate that one patron might shoot another and shooting inside neighborhood bar was not foreseeable, such that bar owner did not owe duty to injured patron in that case); *Rogers*, 63 N.E.3d at 326 ("Although house parties can often set the stage for raucous behavior, we do not believe that hosts of parties routinely physically fight guests whom they have invited. Ultimately, it is not reasonably foreseeable for a homeowner to expect this general harm to befall a house-party guest."). Here, Jones has failed to carry her burden to show us that the trial court's decision to grant summary judgment in favor of Wilson was improper.

[16] Affirmed.

Mathias, J., and Altice, J., concur.