

FILED

Feb 08 2019, 7:54 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

James R. Browne, Jr.
Andrew B. Janutolo
Abaigeal F. Musser
Goodin Abernathy LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
U-PULL-AND-PAY, LLC
D/B/A PIC A PART

Judy S. Okenfuss
Jenny R. Buchheit
Gregory W. Pottorff
Ice Miller LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

German A. Linares,

*Appellant-Plaintiff,*

v.

El Tacarajo and U-Pull-And-Pay, LLC d/b/a Pic A Part,

*Appellees-Defendants.*

February 8, 2019

Court of Appeals Case No.
18A-CT-276

Appeal from the Marion Superior Court

The Honorable Michael D. Keele, Judge

Trial Court Cause No.
49D07-1606-CT-21285

**Robb, Judge.**

# Case Summary and Issue

[1] German Linares suffered injuries when a mobile food truck serving food in the parking lot of an automobile salvage business exploded while he waited in line for his food. Linares sued both the food truck operator, El Tacarajo, LLC, and the salvage business, U-Pull-and-Pay, LLC doing business as Pic-A-Part ("UPAP"), for negligence. Linares appeals the entry of summary judgment for UPAP, raising one issue for our review: whether summary judgment was inappropriate because UPAP owed Linares a duty regarding dangerous activities on its property or, in the alternative, because UPAP was engaged in a joint venture with El Tacarajo and is vicariously liable for its negligent acts. Concluding UPAP did not owe Linares a duty and was not engaged in a joint venture with El Tacarajo, we affirm the trial court's grant of summary judgment to UPAP.

# Facts and Procedural History

[2] UPAP is an automobile salvage business in Indianapolis, Indiana. In the course of its business, flammable materials are sometimes brought onto UPAP's property when junk cars come into the salvage yard. Brian Brownstein, a UPAP assistant store manager on duty when this incident occurred, explained that when UPAP buys a car, it drains the fluids as part of preparing the car to "be out in the yard area where customers can pull parts[.]" Appendix of Appellant, Volume II at 135. In addition, UPAP sometimes comes across propane tanks or other flammable materials that have been left in cars: "we go

to the auto return auction which tends to have repossessions. People don't have time to take their belongings out of the car, or it was in a serious accident . . . there might have been like a tank in the trunk that they didn't know about[.]" *Id.* at 137. UPAP's employees have been trained in how to handle the flammable materials they come across and the company keeps flammables like aerosols, gasoline, and propane in a flame-retardant cabinet to promote safety at the salvage yard. UPAP also posts warnings and instructions for customers and checks customers' bags and tool boxes as they enter to ensure they have not brought any tools or other materials onto the lot that could lead to fires or explosions.

[3]     El Tacarajo operated a food truck that occasionally sold Mexican food from UPAP's parking lot in 2014 and 2015. Brownstein stated that this arrangement was "a handshake deal" that had been set up when El Tacarajo approached a previous manager and asked if it could come on site to sell food. *Id.* at 59. UPAP's local store managers knew that El Tacarajo would sell food from the parking lot on busy days, usually Saturdays and Sundays, but UPAP had "no expectation" about when they would come; "[i]t was just like whenever." *Id.* at 145; *see also id.* at 154 (Dan Ulrich, general manager for UPAP's eastern stores, stating El Tacarajo would "come in and sell some food and leave. Come and go as they please."). El Tacarajo paid UPAP $25.00 per day on at least some of the days they set up in UPAP's parking lot, but Brownstein was "not sure [the payments] were made every time[.]" *Id.* at 61.

[4] UPAP never asked if El Tacarajo was licensed to sell food. UPAP did not ask El Tacarajo whether it had fire safety procedures in place for using gasoline or propane to operate its truck. In fact, Brownstein stated at his deposition that he never had contact with anyone at the food truck. Ulrich noted that El Tacarajo was "not one of our vendors to where we would be checking all of their identifications." *Id.* at 154. UPAP was not aware of any prior incidents involving an explosion, fire, or other dangerous condition created by a food truck, gas generator, or grill on its premises at any time prior to June 20, 2015. Neither UPAP nor El Tacarajo was aware of any dangerous condition of the food truck or its equipment that would have or could have caused an explosion at any time prior to June 20, 2015. Linares, who was a regular customer of UPAP and who had purchased food from El Tacarajo several times before, stated that he had no reason to believe the food truck was dangerous.

[5] On June 20, 2015, El Tacarajo was on UPAP's property selling food from its food truck. The food truck was positioned in the customer parking lot next to a concrete wall partitioning the parking lot from the salvage yard. Linares also visited UPAP on that date to purchase automobile glass. After making his purchase from UPAP, Linares ordered food from El Tacarajo. As he waited for his food, the food truck suddenly exploded and caught fire. Linares was injured and taken by ambulance to Eskenazi Hospital for treatment.

[6] The Indianapolis Fire Department determined the explosion was caused by the ignition of gas fumes from an open cooking flame. The Marion County Public Health Department made similar findings, concluding that an El Tacarajo

employee caused the explosion when, in order to refill a generator, he opened a can of gasoline too close to a flattop grill.

[7] On June 15, 2016, Linares filed his complaint against UPAP[1] and El Tacarajo, alleging in Count One that El Tacarajo was negligent in its handling of combustible fuels, in failing to have a license from the Marion County Health Department, in failing to train its employees, and in failing to inspect its truck and equipment. Count Two alleged UPAP was negligent in failing to monitor or inspect El Tacarajo's operations, failing to determine whether El Tacarajo was properly licensed, and failing to study the food truck's safety procedures. Count Two also alleged UPAP was vicariously liable for El Tacarajo's negligent acts because it was engaged in a joint venture with El Tacarajo.

[8] During discovery, UPAP served requests for admissions on El Tacarajo, asking El Tacarajo to admit: El Tacarajo did not share profits with UPAP; UPAP did not pay El Tacarajo to market or sell food to UPAP's customers; UPAP and El Tacarajo were not engaged in a joint venture; and UPAP did not control any aspect of El Tacarajo's business or operations. Despite participating in this litigation by, for instance, filing an appearance, filing an answer and jury demand, and attending depositions, El Tacarajo did not respond to the requests for admissions.

---

[1] Linares first filed his complaint against El Tacarajo and Parts Landlord, LLC d/b/a Pic a Part but later amended his complaint to identify UPAP d/b/a Pic a Part as the proper defendant.

[9] UPAP then filed a motion for summary judgment arguing first that UPAP had no duty to protect Linares from the unforeseeable actions of El Tacarajo and second that it was not vicariously liable for the negligent acts of El Tacarajo. Following a hearing, the trial court granted UPAP's motion for summary judgment and finding no just reason for delay, entered final judgment in favor of UPAP. Linares timely filed a notice of appeal on February 9, 2018.

# Discussion and Decision[2]

## I. Standard of Review

[10] When reviewing the grant or denial of summary judgment, we apply the same test as the trial court: summary judgment is appropriate only if the designated evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Sedam v. 2JR Pizza Enterps., LLC*, 84 N.E.3d 1174, 1176 (Ind. 2017). "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences." *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014).

---

[2] We heard oral argument in this case on October 25, 2018, at Purdue University. We extend our appreciation to the University, the Krannert Executive MBA Program, and the students for their hospitality, and to the attorneys for their presentations.

Our review is limited to those facts designated to the trial court, T.R. 56(H), and we construe all facts and reasonable inferences drawn from those facts in favor of the non-moving party, *Meredith v. Pence*, 984 N.E.2d 1213, 1218 (Ind. 2013). On appeal, the non-moving party carries the burden of persuading us the grant of summary judgment was erroneous. *Hughley*, 15 N.E.3d at 1003. A grant of summary judgment will be affirmed if it is sustainable upon any theory supported by the designated evidence. *Miller v. Danz*, 36 N.E.3d 455, 456 (Ind. 2015).

## II. Summary Judgment

### A. Negligence

To prevail on his negligence claim, Linares must show: 1) UPAP owed a duty to Linares; 2) UPAP breached that duty by allowing its conduct to fall below the applicable standard of care; and 3) UPAP's breach of duty proximately caused a compensable injury to Linares. *Smith v. Walsh Constr. Co. II, LLC*, 95 N.E.3d 78, 84 (Ind. Ct. App. 2018), *trans. denied*. The element of duty is generally a question of law to be determined by the court, whereas the elements of breach and proximate cause generally present questions of fact to be determined by the factfinder. *Id.* Thus, the question of UPAP's duty to Linares is amenable to determination by summary judgment. *Id.* at 85.

Linares contends that UPAP had a duty to take reasonable steps to ensure that El Tacarajo's food truck operation did not harm Linares while he was on UPAP's property. He claims that given the nature of UPAP's business, a gas

explosion of any sort on UPAP's property was foreseeable and therefore, UPAP had a duty to take "reasonable precautionary steps to inspect El Tacarajo's operations[.]" Appellant's Brief at 11.

[14] The duty a landowner owes to an invitee is well-established by Indiana premises liability law: a landowner must exercise reasonable care for the invitee's protection while the invitee is on the premises. *Rogers v. Martin*, 63 N.E.3d 316, 320 (Ind. 2016). When a physical injury occurs as a result of a dangerous *condition* on the premises, the Restatement (Second) of Torts section 343 accurately describes the landowner-invitee duty.[3] *Id.* at 322-23. However, injuries can also occur due to dangerous *activities* on the premises unrelated to the premises' condition, and landowners owe their invitees the general duty of reasonable care under those circumstances, as well. *Id.* at 323. The "critical element" in deciding whether a duty should be extended to a case in which an invitee's injury occurs due to some harmful activity on the premises is foreseeability. *Id.* at 324.

---

[3] Restatement (Second) of Torts section 343 (1965) provides:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
> (c) fails to exercise reasonable care to protect them against the danger.

Foreseeability as a component of duty is evaluated differently than foreseeability in the context of proximate cause: whereas foreseeability for purposes of proximate cause requires an evaluation of the facts of the actual occurrence, foreseeability for purposes of duty is a general threshold determination that requires a more general analysis of the broad type of plaintiff and harm involved, without regard to the specific facts of the occurrence.

*Cosgray v. French Lick Resort & Casino*, 102 N.E.3d 895, 900 (Ind. Ct. App. 2018) (the "foreseeability analysis"). "[F]or purposes of determining whether an act is foreseeable in the context of duty we assess whether there is some probability or likelihood of harm that is serious enough to induce a reasonable person to take precautions to avoid it." *Goodwin v. Yeakle's Sports Bar and Grill, Inc.*, 62 N.E.3d 384, 392 (Ind. 2016) (quotation omitted).

The parties agree that Linares was an invitee on UPAP's property. The parties also agree that UPAP therefore owed Linares the duty to exercise reasonable care to keep its premises in a reasonably safe condition and to warn him of known dangers or dangers that should have been known to UPAP. The parties disagree on the appropriate test to be applied in determining whether UPAP had a duty to protect Linares from the food truck explosion.

Linares first asserts his claim should be evaluated under section 343 of the Restatement (Second) of Torts and a committee comment thereto, arguing that he was "injured due to a dangerous appliance and the hazardous use of explosive materials[,]" and if UPAP had taken "reasonable precautionary steps to inspect El Tacarajo's operations, it could have foreseen and prevented the

explosion[.]" Appellant's Br. at 11-12.[4] Linares concludes UPAP, by the exercise of reasonable care, would have discovered the dangerous condition of the food truck and should have realized that it involved an unreasonable risk of harm to Linares and other business invitees.

[18] We disagree with Linares that UPAP's duty should be determined under the standard section 343 analysis for injuries resulting from a condition of the land. Although Linares is correct that when an injury occurs as a result of some condition on the land, section 343 describes the landowner-invitee duty and a foreseeability analysis is not required, Linares was not injured by a condition of UPAP's land. "Conditions of the land" are typically physical characteristics, such as untreated ice, a decaying tree, or uneven flooring. *See Dehoyos v. Golden Manor Apartments*, 101 N.E.3d 874 (Ind. Ct. App. 2018) (addressing premises liability under section 343 when plaintiff slipped on ice on sidewalk outside her apartment building); *Marshall v. Erie Ins. Exch.*, 923 N.E.2d 18 (Ind. Ct. App.

---

[4] The comment, quoted by Linares in his brief at page 13, states:

> f. Appliances used on land. A possessor who holds his land open to others must possess and exercise a knowledge of the dangerous qualities of the place itself and the appliances provided therein, which is not required of his patrons. Thus, the keeper of a boardinghouse is negligent in providing a gas stove to be used in an unventilated bathroom, although the boarder who is made ill by the fumes uses the bathroom with knowledge of all the circumstances, except the risk of so doing. This is true because the boardinghouse keeper, even though a man of the same class as his boarders, is required to have a superior knowledge of the dangers incident to the facilities which he furnishes to them.

2010) (unhealthy tree fell onto neighbor's house in urban or residential area), *trans. denied*; *Smith v. King*, 902 N.E.2d 878 (Ind. Ct. App. 2009) (plaintiff fell through hole in floor of house under construction).

[19]    In *Jones v. Wilson*, 81 N.E.3d 688 (Ind. Ct. App. 2017), the plaintiff attended a wrestling event at a county fairgrounds and was injured when she was assaulted by an unknown assailant as she walked through a dark parking lot to her car after the event. The plaintiff sued the event promoter and the fairgrounds' owner, and the trial court granted summary judgment to the promoter. On appeal, the parties disagreed over whether section 343 or the foreseeability analysis should be applied: the plaintiff argued she was injured because the lack of lighting which contributed to her attack is a condition of the land, whereas the promoter argued she was injured by an assailant not by, for instance, stepping in a hole and therefore she was injured because of activities occurring on the land. *Id.* at 694-95. The court agreed with the promoter: the plaintiff's "injuries resulted from the conduct of a third person" and the foreseeability analysis therefore applied. *Id.* at 695. This situation is similar: although it was the stove in the food truck on UPAP's property igniting that caused the explosion, Linares's injuries resulted from the *activities* of El Tacarajo's employees in relation to that stove. Therefore, the foreseeability analysis must be applied to determine if a duty exists at all.

[20]    Despite claiming his injuries were caused by a condition of the land, and despite further claiming that the foreseeability analysis should not apply because this case does not involve a criminal or intentional act, Linares does

address the foreseeability analysis. He advocates that in this case, the test requires considering whether "a gasoline explosion or fire on UPAP's property that could harm its customers" was foreseeable and concludes that it was. Appellant's Br. at 15. In support of his argument, Linares notes that flammable materials regularly come onto UPAP's property; that its employees are trained in safety hazards connected with collecting, storing, and handling those materials; and that it takes steps to prevent customers from using ignition sources in the yard; therefore, UPAP was at least theoretically aware of the hazards associated with flammable materials.[5] Linares's reliance on UPAP's policies and procedures related to its own business are irrelevant for purposes of this analysis because it was not the activities surrounding *UPAP's* business that caused Linares's injuries. In other words, Linares was not injured by an explosion of flammable materials that belonged to or were the responsibility of UPAP. For this reason, we also disagree with Linares that the "broad type of harm" is *any* explosion on UPAP's premises.

[21] Although the foreseeability analysis for determining duty is a consideration of the *broad* "zone of danger" that could be caused by activities on the land (as opposed to the more specific "zone of danger" addressed by proximate cause), we do not conduct the analysis in the *broadest* terms possible. For instance, in

---

[5] To the extent Linares relies on the fact that there was a fire on UPAP's property in the past, Brownstein stated at his deposition that a car caught fire during his time working for UPAP, but he could not recall whether it occurred before or after the food truck explosion. App. of Appellant, Vol. II at 138. Moreover, it was a car in the salvage yard that caught fire, not a food truck or even a car in the parking lot. For both of those reasons, that fire does not make the food truck explosion foreseeable.

*Goodwin*, the court identified the broad type of harm as "the probability of a criminal attack, namely: a shooting inside a bar." 62 N.E.3d at 393. Thus, it is clear that we do not completely divorce this analysis from the circumstances; if we were to do so, the broad type of harm in *Goodwin* would have been described as simply the probability of an altercation between two bar patrons. *See also Estate of Staggs ex rel. Coulter v. ADS Logistics Co., LLC*, 102 N.E.3d 319, 325 (Ind. Ct. App. 2018) (identifying the plaintiffs as motorists and the broad type of harm that occurred as "a vehicular accident after commercial cargo became unsecured and struck the motorists" rather than the broadest definition of the type of harm as simply a "motor vehicle accident"), *trans. denied*; *Polet v. ESG Sec., Inc.*, 66 N.E.3d 972, 983 (Ind. Ct. App. 2016) (identifying the type of plaintiff as "a patron of an outdoor concert" and the broad type of harm as "the probability or likelihood of a stage collapse caused by a strong wind").

[22] Accordingly, Linares's formulation of the foreseeability analysis is *too* broad. True, UPAP was generally aware that flammable liquids and open flames can interact explosively and therefore had a duty to protect its invitees from explosions due to the materials that belonged to it. But for purposes of the foreseeability analysis, the type of plaintiff is a patron of a business and the broad type of harm is the probability or likelihood that an independently operated food truck on the premises of that business would explode or catch fire due to employee error.

[23] No one—not UPAP, not El Tacarajo, and not Linares himself—believed or had any reason to believe the food truck was defective or dangerous. Had UPAP

inspected the food truck, as Linares believes it should have, first, it is unclear what UPAP, as a salvage business, would have been qualified to inspect for, and second, there *still* would not have been any reason to believe the food truck was defective, because it was not in fact a defect that caused the explosion but rather human error. As for UPAP's alleged failure to inquire about El Tacarajo's license, the record indicates as of August 2014, El Tacarajo had an expired certified food handler certificate and an unpaid licensing fee. It is not clear that remained true as of the date of this incident and further, the licensing requirement apparently had no bearing on safe operation of the food truck, only the safe handling of food. Finally, there was no designated evidence to suggest UPAP had knowledge of any food truck explosions anywhere in the past, let alone any of the same or similar nature.

[24] Should food trucks be inspected? Probably. Should UPAP have taken more interest in a mobile business it allowed to operate on its premises and sell to its customers? Possibly. But should a company in a completely unrelated private business which periodically provides a parking space be required to conduct that inspection and ensure the food truck is safely maintained and its employees properly trained? Even if UPAP had asked the questions Linares and the dissent argue it should have, it still would not have been reasonably foreseeable

to UPAP that the food truck would suddenly explode because of an employee's negligence.[6]

[25] In a recent case, this court considered whether a lake owner had a duty to protect a swimmer from contracting a rare brain infection caused by an amoeba found naturally in fresh water. *Daviess-Martin Cty. Joint Parks & Recreation Dep't v. Estate of Abel by Abel*, 77 N.E.3d 1280 (Ind. Ct. App. 2017), *trans. denied*. The court determined that it was not reasonably foreseeable that a swimmer would contract such an infection and held there was no duty. *Id.* at 1289-90. In that case, the landowner's obligation was to provide a safe lake and yet the court found there was no duty and reversed the trial court's denial of summary judgment in favor of the landowners. Here, we are reviewing the grant of summary judgment where the defendant is several steps removed from being directly responsible for the instrument causing damage.

[26] Focusing on the harm inflicted on Linares when an employee of a food truck UPAP occasionally allowed onto its property—an employee whose job it was to operate a mobile food truck that relies on a generator to power its

---

[6] Linares concludes that "[a] jury should be left with the task of determining whether, under a complete picture of the evidence, UPAP breached a duty owed to Mr. Linares." Appellant's Br. at 15. It is unclear whether Linares is advocating that we apply the "totality of the circumstances" test that was abandoned by our supreme court when it decided *Goodwin, see* 62 N.E.3d at 389 ("[W]e now recognize that although the 'totality of the circumstances' test is useful in determining foreseeability in the context of proximate causation, it is inappropriate when analyzing foreseeability in the context of duty."), or whether he is arguing that the case should be decided on the factual determination of breach. In either event, determining whether UPAP owed Linares a duty using the foreseeability analysis is the threshold determination. *See Cosgray*, 102 N.E.3d at 900; *Goodwin*, 62 N.E.3d at 386 ("Absent a duty there can be no negligence or liability based upon the breach.").

operations—fueled the generator in too close proximity to an open flame, we conclude that such harm was not normally to be expected and thus was not reasonably foreseeable by UPAP. Linares' injury is unfortunate, but UPAP did not owe him a duty.

## B. Vicarious Liability

[27] Linares also advanced a claim for vicarious liability alleging UPAP and El Tacarajo were engaged in a joint venture. "As in a partnership, the parties to a joint venture are jointly and severally liable." *DLZ Indiana, LLC v. Greene Cty.*, 902 N.E.2d 323, 330 (Ind. Ct. App. 2009). A joint venture is "an association of two or more persons formed to carry out a single business enterprise for profit." *Robbins v. Trustees of Indiana University*, 45 N.E.3d 1, 6 (Ind. Ct. App. 2015). In a joint venture, "the parties must be bound by an express or implied contract providing for (1) a community of interests, and (2) joint mutual control, which is an equal right to direct and govern the undertaking that binds the parties to the agreement." *Id.* A joint venture agreement also must provide for sharing of profits. *Id.* A joint venture is similar to a partnership, except a joint venture contemplates a single transaction. *Id.*

[28] Although whether a joint venture exists is generally a question of fact, where the question can be resolved by looking only at undisputed facts, the existence of a joint venture is a question of law appropriate for summary judgment. *DLZ Indiana, LLC.*, 902 N.E.2d at 328. Our review of the designated materials reveals that to the extent there was an agreement between El Tacarajo and

UPAP, and to the extent such agreement may have been mutually beneficial, it is undisputed that any such agreement did not provide for mutual control over the venture. El Tacarajo unilaterally decided when to go to UPAP's premises to sell its food, who to employ, what food it would offer, and how much it would charge. UPAP unilaterally decided where on its property El Tacarajo could park and it could have told El Tacarajo to leave on any given day or to leave and never return. No decisions were made jointly by UPAP and El Tacarajo in regard to the food truck operation.

[29] In addition, it is undisputed that even if El Tacarajo occasionally paid UPAP for use of its parking lot, it always paid $25.00 and that amount had no relationship to the profits El Tacarajo earned during a given sales day. *See Walker v. Martin*, 887 N.E.2d 125, 138 (Ind. Ct. App. 2008) (holding that parties were not engaged in a joint venture because they did not share in any profit from the sale of logs, although one party paid the other per load based on miles traveled or per board feet of wood hauled), *trans. denied*; *Inland Steel v. Pequignot*, 608 N.E.2d 1378, 1382 (Ind. Ct. App. 1993) (holding that a contract for steel shipments at predetermined rates is not profit sharing for purposes of establishing a joint venture), *trans. denied*. Thus, any agreement the parties had did not provide for profit-sharing.

[30] The fact that two or more parties agree to work "jointly and in collaboration" or "collectively" does not necessarily mean that they are engaged in a joint venture. *DLZ Indiana, LLC*, 902 N.E.2d at 329. Even without considering El Tacarajo's failure to respond to UPAP's requests for admissions about the

arrangement, the undisputed designated evidence demonstrates that UPAP was not engaged in a joint venture with El Tacarajo for the purpose of finding UPAP vicariously liable for El Tacarajo's negligence.

# Conclusion

Linares has failed to carry his burden to show us that the trial court's decision to grant summary judgment in favor of UPAP was improper.

Affirmed.

Vaidik, C.J., concurs.

Kirsch, J., dissents with opinion.

German A. Linares,

*Appellant-Plaintiff,*

v.

El Tacarajo and U-Pull-And-Pay, LLC d/b/a Pic A Part,

*Appellees-Defendants.*

Court of Appeals Case No.
18A-CT-276

**Kirsch, Judge, dissenting.**

Food truck explosions occurred in Traverse City, Michigan in 2013; Philadelphia, Pennsylvania in 2014; Foggy Bottom, District of Columbia in 2016; Portland, Oregon in 2017; Downtown, District of Columbia in 2017; and in Southwest Washington, District of Columbia, in 2018.

[2]    In the Philadelphia explosion, two people were killed; nine others were injured. The explosion shook buildings in the area and sent a fireball 200 feet into the air. The leaking propane tank was sent ninety-five feet onto neighboring property. The subsequent lawsuit was settled for One Hundred and Sixty Million Dollars, believed to be the largest pre-trial personal injury settlement in the state.

[3]    Food trucks carry flammable materials in close proximity to open-fire grills. As such, they pose inherent dangers. The *National Fire Prevention Journal* reported that "A standard 20-gallon propane tank has the same explosive capability in 170 sticks of dynamite." *NFPA Journal*, May-June 2015.

[4]    Beginning in 2014, El Tacarajo operated a food truck from time to time upon the premises of U-Pull-and-Pay, LLC ("UPAP"). El Tacarajo routinely paid UPAP $25.00 for each day it parked its truck on their premises and sold food which was cooked on its truck to UPAP's customers.

[5]    On June 20, 2015, German Linares came upon UPAP's property to conduct business with UPAP. While there, he stood in line at the El Tacarajo food truck which was parked upon the UPAP premises. While he was waiting, the food truck exploded, injuring Linares. It was later determined that the explosion was caused by an El Tacarajo employee who opened a can of gasoline too close to a hot grill on the truck.

Linares was on the UPAP property for a business purpose. He was a business invitee and was owed a duty of reasonable care. He sustained physical harm caused by the accidental or negligent acts of an El Tacarajo employee.

UPAP was well aware of the risks of explosions from handling flammable materials. Indeed, as noted in the majority opinion, UPAP trains its employees in handling flammable materials and posts warnings and instructions for its customers about the dangers.

Notwithstanding its knowledge of the risks of mishandling gasoline, propane, and other flammable materials, UPAP made no inquiry or investigation of El Tacarajo's use of flammable substances on its property in close proximity to its customers. UPAP failed to make reasonable inquiries about El Tacarajo's operations and failed to determine whether such operations posed an unreasonable risk of harm to its customers. Indeed, nothing in the record before us indicates that UPAP made *any* inquiry regarding (1) whether El Tacarajo was licensed to sell food in the conduct of its business, (2) whether it trained its employees in the handling of flammable substances in close proximity to heat sources, (3) whether it used gasoline or other flammable substances in its operations, (4) whether it had proper fire safety procedures in place, or (5) whether it complied with legal and safety requirements.

*Restatement of the Law 2d*, Torts (1965), Section 344 provides:

> A possessor of land who holds it open to the public for entry for
> his business purposes is subject to liability to members of the
> public while they are upon the land for such a purpose, for

physical harm caused by the accidental, negligent, or intentional harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to

(a) discover that such acts are being done or are likely to be done, or

(b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.

[10] Summary judgment is rarely appropriate in negligence cases and, from my perspective, is not appropriate here. These cases are fact sensitive and are governed by a standard of the objective reasonable person. The determination of liability should be made by a jury after hearing all the evidence. *Rhodes v. Wright*, 805 N.E.2d 382, 387 (Ind. 2004).

[11] I would reverse the judgment of the trial court and remand for further proceedings.